[Civ. No. 5050.  Second Appellate District, Division Two.—June 27, 1927.]

MAY PETERSON et al., Respondents, v. ANNA T. LAR-QUIER, Appellant.

H. G. Weyse for Appellant.

Harry Lyons for Respondents.

CRAIG, Acting P. J.—It appears that prior to November 8, 1922, the appellant authorized and requested one James D. Seely to lease for her certain real property situated in the city of Los Angeles, of which she was the owner, and upon which she proposed to construct an apartment house; that in compliance with such authorization and request Seely personally presented to appellant a written communication in the nature of a proposal; signed by the respondents, and reciting, "I hand you herewith $500 as a deposit for the lease of an apartment house to be erected" (upon appellant's property), construction to commence within thirty days, and that when said lease should be ready for execution, "I will hand you the sum of $700 which with the above deposit is to be placed in escrow,

together with the lease''; that upon the filing of a notice of completion ''I will hand you an additional sum of $1,200, which is to be also placed in escrow,'' and that the escrow instructions should require that upon notice of completion the foregoing amounts, together with the lease, would be delivered, and that the total of $2,400 should be applied as rent for the first two months and the last two months of a ten-year lease. It was also proposed that the house should consist of forty rooms, and that the rate of rental would be $15 per room; that upon the failure of the respondents to pay either of said sums as provided for in the document mentioned, they would forfeit all moneys theretofore deposited, and that the first, or $500 payment, should be returned if within five days appellant was unable to produce a lease ready for execution. Beneath the signatures of the respondents appears the following: ''Accepted and agree to pay Boyce-Seely Construction Co. the sum of One thousand dollars ($1000) commission for securing above lease. 11/11/22. (Signed) Mrs. Anna T. Larquier.'' Appellant having thereafter refused to lease to the respondents the premises in question, this action was commenced, praying specific performance or damages. Upon the rendition of judgment in the sum of $4,800 damages, together with interest and costs, for the plaintiffs, Mrs. Larquier appealed.

From the testimony of Seely and the respondent Peterson it appears that the prospective lessees were at all times ready, able, and willing to lease the premises in controversy, and that they signed the foregoing instrument, deposited in escrow all the above amounts of money, and demanded that appellant execute a lease which Seely had prepared in conformity with the specifications of the first instrument; that Seely wrote to appellant, and visited her upon several occasions, both alone and with Mr. Peterson, requesting that appellant sign the lease, but that upon each such occasion she declined to do so, stating that she had not yet received from the Bank of Italy her papers, or her building contract; that on or about November 23, 1922, appellant wrote a letter to Seely stating that the $500 had not been *handed to her*, and that the agreement was therefore ''null and void.'' Seely testified that he explained to Mrs. Larquier that under the escrow instructions he was

not permitted to pay the money to appellant in person until she should have complied therewith, and that he urged her to go through with the escrow and enable him to deliver the lease to respondents. Mrs. Larquier testified that when the first document was presented to her respondents had not signed it, "that there was not a signature on it," that the acceptance had been written over her signature thereafter, and that she did not agree to pay the commission therein mentioned. Appellant's excuse for refusing to sign the lease, when she testified at the trial, was, that the proposed lessees were "not suitable and responsible." Beyond this, however, she swore that she was unable to remember any of the dates, correspondence, conversations, or transactions, except that her husband may have written the letter repudiating the agreement upon the ground that the initial payment had not been handed to her personally, and she accounted for her asserted fickle recollection by the fact that it had been "a long time" since the occurrence. Seely testified, however, that he personally wrote the acceptance upon the contract in appellant's presence, at her residence, following a thorough discussion with her, and that she signed the instrument exactly as it appeared when introduced in evidence; that during his subsequent visits appellant instructed him to "tell Mrs. Peterson everything will be all right." It is admitted that during that same month, and while these negotiations were pending, Mrs. Larquier leased the same property to another party for a term of ten years at the rate of $16 per room, and erected an apartment house thereon, which was completed in May, 1923.

During the examination of appellant under section 2055 of the Code of Civil Procedure, counsel for respondents offered for identification the document dated November 8, 1922, to which appellant interposed an objection. The contract was ordered "marked Plaintiffs' Exhibit 1 for identification," and thereafter during the direct examination of the respondent Peterson, the instrument was offered and received in evidence as Plaintiffs' Exhibit 1, without objection. Appellant insists that the contract was but a mere memorandum for a lease, that it was incomplete, uncertain, and ambiguous; that it was unenforceable as against either party, for the reason that it was not personally delivered to appellant, and the lease was not executed within

five days as agreed, and that said instrument was therefore erroneously admitted in evidence by the trial court. It is argued that the respondents were not bound by the terms of the contract to do anything, and that merely depositing money in escrow did not constitute an act which would have enabled the appellant to compel a specific performance had she cared to do so.

Appellant devotes her principal argument to an attempt to establish certain legal principles governing the specific performance of contracts. This is all beside the subject, since the court did not render a judgment for specific performance, but only for damages. It is further claimed that the instrument which the parties signed was a mere memorandum, and not a contract at all, because too indefinite and incomplete. The objections along that line are untenable. A number of specifications of indefiniteness are attempted to be made—for example, it is said that the "plaintiffs do not agree to pay any definite sum as rent for ten years." It is admitted that the lease agreed upon was to be for the period of ten years, at a rental of $15 per room, or $600 per month, and that the entire amount thus provided would be $72,000. And yet, it is said, the plaintiffs did not agree to pay that sum. Merely to state this and other similar objections to the agreement is to show their fallacy. The respondents made a certain definite proposal which the court found had been accepted, and the evidence clearly sustains that finding. We think the writing sufficiently definite as to time and place, parties and subject matter to sustain a judgment for damages for breach of contract.

It is argued that the court erred in admitting the agreement in evidence. As above indicated, it was admitted without objection.

It is also seriously insisted that there was no enforceable contract for the reason that the lease provided therein to be made was not in fact executed within the five-day limit fixed in the offer. The provision in question is: "The above deposit of $500.00 to be returned to me if within five days you are unable to produce to me leases for execution." It appears that the appellant did not in fact execute any lease within the five-day limit, or at all, but to maintain that her refusal to carry out her contract in that behalf

may be a defense in an action against her for breach of her contract is a novel theory, and amounts to an attempt to profit by her own wrong. It is said that this clause did not bind the defendant to produce a lease, but that the provision intended that the plaintiffs do so. There is nothing in the agreement to that effect, that such a construction contradicts the plain language of the writing. It is clear that the intention of the parties was that if it should not be within the power of the appellant to produce a lease within five days, then the transaction would be ended, and the $500 returned to the respondents, but there is nothing in evidence to indicate that she was "unable" to lease the premises as provided in the contract, but merely that she refused to do so. The fact that she did lease the premises establishes her ability to produce the lease contemplated.

Concerning the claim that there was no proof that respondents sustained damage, it is sufficient to say that the court found that at the time of the execution of the agreement between respondents and appellant the reasonable rental value of the premises was $15 per room on a ten-year lease, and that on or about November 22, 1922, at the time when appellant repudiated and breached her contract and refused to execute a lease as provided by the agreement, the rental value of the property in question had enhanced in excess of one dollar per room per month for such a lease. This finding is amply supported by the evidence. The measure of damages in such a case is the difference between the rental agreed to be paid and the rental value of the premises for the term; for in this way only can the law compensate an aggrieved party and put him in the same position as if a contract had been performed, which, of course, the law seeks to do. (*Coburn* v. *California Portland Cement Co.*, 144 Cal. 81 [77 Pac. 771].)

The court erred in one respect. It allowed interest against appellant from November 22, 1922, apparently upon the theory that interest should begin at the time of the breach of the contract. However, in an action for damages, where judgment is rendered in favor of the plaintiff, and where, as here, the plaintiff's claim is unliquidated, the law does not authorize the allowance of interest. (*Brady* v. *Wilkinson*, 44 Cal. 239; *Ferrea* v. *Chabot*, 121 Cal. 233 [53 Pac. 689, 1092].) It appears that the judgment thus erroneously

allows interest from November 22, 1922, until the rendition of judgment. This provision is directed to be stricken out, and as thus modified, the judgment is affirmed.

Judgment affirmed.

Thompson, J., and Murphey, J., *pro tem.*, concurred.