[Civ. No. 6103.    Fourth Dist.    Aug. 20, 1959.]

EDWARD De FLAVIO, Respondent, v. O. GLENN ESTELL et al., Appellants.

Rubin, Seltzer & Solomon and Herbert J. Solomon for Appellants.

Hillyer & Crake for Respondent.

MUSSELL, J.—This is an action for damages for breach of a building construction contract. The contract is in writing and is dated September 13, 1957. In it the plaintiff construction company agreed to construct a four-unit apartment on property owned by defendants in San Diego for the sum of $26,000. On or about October 5, 1957, defendants entered into a written contract with another contractor for the construction of the said apartment and on October 10, 1957, defendant O. Glenn Estell notified plaintiff that he (Estell) was committed to another contractor and could not proceed with the De Flavio contract. Plaintiff then filed the present action and recovered judgment for damages in the sum of $3,100, plus attorneys' fees and costs. Defendants appeal from the judgment, claiming that the evidence does not support the decision and that the court erred in admitting certain evidence.

Prior to September 12, 1957, appellants decided to build a four-unit apartment on their property. They had negotiated with at least one general contractor and had consulted a loan correspondent for various lending agencies to ascertain the kind of financing they could secure for this construction.

On September 12, 1957, respondent Edward De Flavio had a contract as general contractor to build a four-unit apartment for a Mr. Scales, who was acquainted with appellants. Scales informed De Flavio that appellants were also planning to build rental units and suggested that he contact them. On September 12, 1957, Herbert Weiss, a salesman for De Flavio, called on appellants at their place of business and was advised by Mr. Estell that he was considering building a four-unit apartment house to the rear of his residence; that he had contacted another builder and was talking to him about it and that this builder had offered to construct the apartment house for $25,000. Weiss stated that they could meet or beat the price on the units and made an appointment to meet the appellants at their home the following morning.

On September 13, 1957, Weiss met with appellants as agreed and discussed. with them all details of the construction of appellants' proposed building, including a number of extras. Weiss called up Curtis Coleman Company, the lender for appellants, and in their presence confirmed the terms of the loan application made previously by them. He then obtained from appellants all credit information necessary to submit to the lender. Estell had to leave for his place of business and he and his wife discussed whether the contract, which Weiss had prepared, should be then signed by her in order that De Flavio could start his work on preparing plans and getting ready for the construction. Mr. Estell stated that he wanted some time to go over the contract and told Mrs. Estell to go ahead and sign it. Weiss read the contract and specifications to her and she then signed the contract, as well as the specifications and the application for a loan. Weiss left these documents with Mrs. Estell for approval and signature of her husband. Weiss immediately delivered a copy of the contract and the signed loan application to Curtis Coleman Company and on September 17 called appellants and notified them that the company had approved the loan.

On September 18, Weiss and De Flavio met with appellants and the terms of the contract were discussed at length. Construction plans were shown to appellants and they asked for certain changes, such as an extension of the roof overhang from 18 to 30 inches and relocation of certain heaters. Extras such as sewer, gas, electrical and water installations and blacktop for off-street parking were again discussed. De Flavio then asked Mr. Estell to sign the contract and after a short discussion with his wife, Estell said, "We might as well do it.

Let's go ahead.'' Mr. Estell then signed the contract and approved the specifications.

On September 19, 1957, appellants called Curtis Coleman to discuss with him the terms of their loan commitment, including the interest rate and the repayment period. Appellants did not reject the loan and on September 26, Coleman prepared the loan escrow instructions and forwarded them to the United States National Bank. On October 4, Weiss delivered the loan escrow instructions to appellants for their examination and Estell discovered that the monthly installment figure was in error and that an agreed reduction in the loan fee had not been incorporated in the instructions. These errors were corrected at the instance of Weiss and on October 6, he took the corrected escrow instructions to appellants, who then notified Weiss that they wished to cancel the contract and Estell complained about the interest rate of the loan, stating that he thought that the rate should have been lower. Weiss then advised Estell that he was not obligated to finance through Curtis Coleman but could try for a better loan at any other place he desired.

On October 7, De Flavio called appellants and discussed the situation with them. The appellants did not then inform De Flavio that they had entered into a contract with another contractor on October 6, 1957, for the construction of the building involved. On October 10, 1957, De Flavio and Weiss again met with appellants, who then stated that they could not pay the loan fees as agreed. De Flavio then agreed to furnish all of the extras under the contract at his own cost and to take a noninterest bearing note for the amount of any extras which they could not pay for in cash in order to help them proceed with the construction contract. Coleman was called to the Estell home and, after discussing the loan agreement, he informed appellants that they were not obligated to secure their financing from him. Appellants would not agree to proceed with the contract and Mr. Estell stated he was now committed to another contractor and could not proceed with the De Flavio contract. This refusal on the part of appellants to proceed with their agreement resulted in the filing of the present action in which plaintiff recovered judgment for damages in the amount stated.

■ Appellants first contend that the contract involved was delivered conditionally on September 18, 1957, at which time it was not intended to be binding and effective until the defendants had an opportunity to see the finished plans and until a loan had been obtained bearing 6.6 per cent inter-

est and having a maturity period of at least 15 years, and until an escrow was opened to consummate the transaction. We are not in accord with these contentions. There is no testimony in the record that on September 18, 1957, when Mr. Estell signed the contract, after carefully reading it and considering it for approximately six days, he or his wife claimed that the contract was conditional and was not considered to be in effect when Mr. Estell affixed his signature thereto and approved the specifications. Moreover, De Flavio informed appellants on September 13, that he would like to have the contract signed then so the lumber could be ordered for both the Estell and Scales jobs at one time.

The appellants state that delivery of the contract was conditional upon their seeing the final plans for the construction work but the record shows that the plans were signed by both appellants by September 18 and that it was understood by all parties that the construction of the four rental units would be identical to each other and from the same plans. Appellants did not complain that the plans were inadequate when they signed the contract and approved them, nor did they then contend that their understanding was that the contract was not to be in effect unless a 6.6 per cent loan was obtained. The contract contains no such provision and in paragraph 31 thereof provides that the appellants, as owners, are to provide the necessary funds. The record also shows that when Mr. Estell signed the contract the terms of the loan commitment, as made, were described to him and he did not refuse to sign the contract by reason of the interest rate therein stated. Moreover, on September 19, 1957, Estell discussed the terms of the loan with the lender directly and at no time complained that the commitment was not satisfactory to him. It is clear from appellants' own testimony that the 7 per cent interest rate set forth in the loan papers was known to them long before they decided to sign the contract.

Appellants next contend that plaintiff did not sustain his burden of proving damages resulting from the alleged breach of contract. This contention is without merit. In *Stark* v. *Shaw,* 155 Cal.App.2d 171 [317 P.2d 182], in an action for damages for failure to perform a roofing contract it was there contended that plaintiff failed to establish with certainty that the roofing company would have made any profit at all had the agreement been performed and that the evidence was insufficient to support a finding that the roofing company was damaged in any reasonably ascertainable amount by

232

reason of the defendant's breach of the contract. ■ The court, in discussing these contentions, said (pp. 180, 181):

" 'A party to a contract is entitled to recover against the other party who violated it, damages for the profits he would have made out of it had it been performed. It is no objection to their recovery that they cannot be directly and absolutely proved. In the nature of things, the defendant having prevented such profits, direct and absolute proof is impossible.' (*McConnell* v. *Corona City Water Co.*, 149 Cal. 60, 66 [85 P. 929, 8 L.R.A.N.S. 1171]; see Civ. Code, § 3300; *Buxbom* v. *Smith*, 23 Cal.2d 535, 541 [145 P.2d 305].) ■ Because it is difficult to measure with mathematical exactitude the detriment suffered in cases of this character, 'it is frequntly held that a reasonable certainty only is required.' (*Hensler* v. *City of Los Angeles*, 124 Cal.App.2d 71, 88 [268 P.2d 12].) In such cases the injured party is entitled to recover damages for the profits he would have made 'by showing how much less than the contract price it will cost to do the work or perform the contract.' (*McConnell* v. *Corona City Water Co.*, *supra.*) "

. . . . . . . . . . . . . . .

■ "Defendant vainly argues that the roofing company is not entitled to recover damages for loss of profits because its past operations do not afford a basis from which anticipated future profits may be ascertained. This theory is not here applicable. The problem is not whether the roofing company has made profits in the past, or whether, as a business, it will produce profits in the future; rather, the issue to be determined is whether the company was reasonably certain to make a profit under *this particular contract.*"

■ In the instant case evidence was introduced showing that plaintiff had constructed a four-unit apartment for a Mr. Scales in San Diego at about the time here involved; that the cost factors in the Scales job and the job here involved would, in general, be the same. There is substantial evidence in the record as to the profit received in the comparable Scales construction job. There was received in evidence, without objection, plaintiff's detailed estimate of the construction cost of the Estell construction in which estimate a profit in excess of the amount of the judgment herein was shown.

J. R. Mestler, a qualified general contractor in San Diego county, testified that he had examined plaintiff's detailed estimate of construction costs of the Estell job and that in his opinion the charges made were reasonable. The trial court

had before it all of the items of expense likely to be incurred in the performance of the contract and thus could determine with reasonable certainty De Flavio's costs and ascertain the fact of a profit and the amount thereof. There is substantial evidence in the record to support the trial court's finding as to the amount of damages and this finding cannot be disturbed on appeal. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

Appellants contend that the trial court erred in failing to find upon the material issue of whether the building construction involved was intended by the parties to be binding and effective on September 18, 1957. This contention is also without merit. The court found in this connection:

"That by an instrument in writing dated September 13, 1957, and signed on that date by Defendant Emma R. Estell, and signed on September 18, 1957, by the Defendant O. Glenn Estell and the Plaintiff Edward De Flavio, and fully executed on September 18, 1957, Plaintiff as general contractor and the Defendants as owners entered into a building construction contract which provided, inter alia, as follows:

"(a) That Plaintiff would construct for Defendants four apartments containing 3,080 square feet;

"(b) That Defendants would pay Plaintiff therefor the sum of Twenty-Six Thousand Dollars ($26,000.00)."

The finding that the contract was "fully executed" and "entered into" is a sufficient finding that the contract was intended by the parties to be binding upon them on September 18, 1957.

Appellants claim it was error to admit the testimony of J. R. Mestler, a general contractor, as to the correctness of De Flavio's submitted estimate. However, this objection is directed to the weight rather than to the admissibility of such testimony and was a matter for the determination of the trial court.

Appellants further contend that it was error to admit into evidence the testimony of Mr. W. L. Thomas on the issue of the general reputation of a witness. In this connection the record shows that Mr. Thomas, Vice-President and Chief Title Officer of the Security Title Insurance Company, was called as a witness as to the general reputation of Mr. Weiss for truth, honesty and integrity. He testified that he had knowledge of such general reputation and was basing his testimony on his own personal knowledge through business transactions with Mr. Weiss and his knowledge obtained from other

persons. The weight to be given his testimony was also a matter for the trial court to determine and no reversible error resulted from the admission of his questioned testimony.

Finally, appellants argue that it was error to admit evidence concerning a contract entered into by defendants with another contractor for the construction involved and that the court erred in admitting certain documents in evidence. The evidence as to the other contract was admissible as bearing on the intent of appellants and their credibility as witnesses. The documents objected to were identified as business records and there was no reversible error in their admission under the circumstances shown by the record.

The judgment is affirmed. The motion for additional attorneys' fees is denied.

Griffin, P. J., and Shepard, J., concurred.