Filed 10/29/13  Hersch and Co. v. Mattel, Inc. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HERSCH AND COMPANY, | B236198 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC399474) |
| v. | |
| MATTEL, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kevin Clement Brazile, Judge.  Affirmed.

Greenberg Glusker Fields Claman & Machtinger, Stephen S. Smith, Rachel Wilkes Barchie; Greines, Martin, Stein & Richland, Robin Meadow and Jeffrey E. Raskin for Plaintiff and Appellant.

Kinsella Weitzman Iser Kump & Aldisert, Lawrence Y. Iser, Kristen L. Spainier; Morrison & Foerster and Miriam A. Vogel for Defendant and Respondent.

_____

Hersch and Company (Hersch) appeals from a judgment following a nonsuit and jury verdict in favor of Mattel, Inc. (Mattel) on contract related claims arising from an exclusive license agreement (License Agreement) to manufacture and sell a board game called Outburst. According to Hersch: Mattel breached the implied covenant of good faith and fair dealing in the License Agreement by discounting Outburst by $17 and destroying the brand; Hersch is entitled to liquidated damages to the degree that Mattel did not act reasonably and in good faith when satisfying its $2 million advertising obligation in years three to five of the License Agreement; Hersch's loss of future profits due to its inability to relicense Outburst to a third party constitute general damages and are therefore not barred by the proscription in the License Agreement against special damages; Hersch's lost future profits are neither speculative nor uncertain; and, finally, the trial court erred when it excluded evidence that was relevant to the implied covenant claim.

We conclude that liquidated damages are not recoverable for breach of the implied covenant, and Hersch's lost future profits are special damages which are barred by the License Agreement. Thus, Hersch is entitled to nothing, and all other issues are moot. Accordingly, the judgment is affirmed.

## FACTS

*The License Agreement*

Hersch and Mattel executed the License Agreement in April 2004. Hersch granted Mattel the right to manufacture and sell Outburst for an initial term from 2004 through 2008. Mattel agreed to pay royalties, and guaranteed that Hersch would receive at least $400,000 in the first year, $600,000 in the second year and then $400,000 for every subsequent year.

Paragraph 8 provided: "[D]uring the first two (2) years of the Initial Term, [Mattel] shall spend a minimum of Two Million Dollars . . . for 'Advertising' . . . [Outburst]. Thereafter, [Mattel] shall spend for Advertising . . . no . . . less than Two Million Dollars . . . in years three through five[.]" Advertising means "the actual, direct, out-of-pocket sums actually paid by [Mattel] to unrelated third parties . . . for media buys,

2

commercial production expenses and retail and promotional activities, including but not limited to 'feature space,' 'white space,' 'end-cap space,' signage and/or retailer merchandising programs (e.g.[,] 'pallets' and 'pre-packs') and retailer promotional discounts (MDF).[1] . . . In the event [Mattel] fails to meet any minimum Advertising expenditure requirement set forth herein, [Mattel] shall pay at such time to [Hersch] as liquidated damages an amount equal to the difference between the minimum amount of Advertising agreed to be spent pursuant to this [License] Agreement and the actual sums paid by [Mattel] for such Advertising."

Paragraph 29 provided: "In no event shall either party be liable to the other for indirect, punitive, special, incidental or consequential damages, including lost profits[.]"

*Mattel's advertising*

During the first two years, Mattel spent $3.7 million on advertising that included a television commercial. Despite Mattel's various marketing efforts, Outburst did not sell well. Mattel made multiple cash offers to Hersch to terminate the License Agreement. None of the offers were accepted.

In 2007, Mattel manufactured 117,648 units of Outburst and implemented the Outburst Program. Pursuant to that program, Kmart and Toys "R" Us purchased Outburst for $18.20 a unit and were billed accordingly. But then, in consideration for engaging in various types of promotional activities for Outburst, Kmart and Toys "R" Us received a $17 credit per unit. In Mattel's view, those credits qualified as MDF.

*This action*

Hersch sued Mattel for breach of contract, breach of the implied covenant and accounting. The matter went to trial. Hersch put on evidence, inter alia, that when Mattel gave Kmart and Toys "R" Us a $17 per unit credit, the Outburst brand was severely damaged. At the time of trial, it was possible that Outburst no longer had any value. When a product is damaged, it can take a generation to rejuvenate it.

---

**1** MDF means market development funds, a term that refers to promotional activities such as discounts and the purchase of retail space.

Mattel filed a motion for nonsuit. The motion was denied in part and granted in part. The case was permitted to proceed as to whether Mattel spent $2 million on advertising during years three through five of the License Agreement. However, the trial court ruled that Mattel did not breach the implied covenant, and lost profit damages based on the inability to relicense Outburst were special, speculative and uncertain, and therefore unavailable. Last, the trial court ruled that Hersch could not prevail on its accounting claim.

The jury determined that Mattel spent $1,987,640 on advertising.[2] As a result, judgment was entered in favor of Mattel.

This timely appeal followed.

## DISCUSSION

### I. Standard of Review.

Our review of a nonsuit is de novo. (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1541–1542.) We must examine the evidence in the light most favorable to the plaintiff. Reversal is required if there is "'some substance to [the] plaintiff's evidence upon which reasonable minds could differ . . . .' [Citations.]" (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 839.)

### II. Liquidated Damages Based on the Mattel's Failure to Provide Reasonable, Good Faith Advertising.

According to Hersch, if we reverse the nonsuit on its claim for breach of the implied covenant,[3] it is entitled to liquidated damages for whatever portion of the $2

---

[2] Essentially, the jury concluded that the Outburst Program qualified as advertising under the License Agreement. The parties explain that $1,987,640 is the sum of $17 multiplied by the number of units that Mattel manufactured in order to implement the Outburst Program. According to Hersch, it was undisputed that Mattel paid Hersch the difference between $1,987,640 and $2 million.

[3] "The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract[.]" (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 690.) The contours of the covenant depend on the contract's purpose. (*Id.* at p. 684.) In short, it "'prevent[s] a contracting party from engaging in conduct which

4

million advertising budget that did not qualify as reasonable or good faith advertising. Hersch's position lacks merit.

Liquidated damages may be recovered only as intended by the parties and expressed by contract. (*Olson v. Biola Coop. Raisin Growers Assn.* (1949) 33 Cal.2d 664, 673–674 [interpreting the contract to determine when the parties intended liquidated damages to be recoverable]; *Thompson v. Goubert* (1959) 168 Cal.App.2d 257, 260.) Thus, for Hersch to prevail on its argument, it must engage in contract interpretation and demonstrate that the parties agreed that Hersch was entitled to liquidated damages if Mattel breached the implied covenant by failing to act reasonably and in good faith when advertising. In its appellate briefs, Hersch does not argue that this was the parties' agreement. Rather, it argues that because the advertising duty included implied-in-law obligations, breach of those obligations triggered liquidated damages.

To resolve the applicability of liquidated damages, we must analyze the License Agreement. Per the License Agreement, Mattel was required to spend $2 million on advertising in years three to five. In lieu of general damages, Hersch was entitled to recover liquidated damages to the degree that Mattel failed "to meet any minimum Advertising expenditure requirement[.]" The language of the liquidated damages clause is clear and unambiguous: it only applies if Mattel did not spend $2 million on advertising. We have no power to extend the clause to breaches of the implied covenant. (*Moss Dev. Co. v. Geary* (1974) 41 Cal.App.3d 1, 9 ["[i]n construing a contract, it is not a court's prerogative to alter it, to rewrite its clear terms, or to make a new contract for the parties"].)

---

(while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'" (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031–1032.) The covenant can be violated if a party subjectively lacks belief in the validity of its conduct, or if its conduct is objectively unreasonable. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372; *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (2002) 100 Cal.App.4th 44, 61–62, fn. 13.)

We easily conclude that Hersch cannot recover liquidated damages for breach of the implied covenant.

## III. Damages Based on Lost Profits.

Hersch contends that lost profits based on its inability to relicense Outburst are general damages and therefore not barred by the proscription against special damages in the License Agreement.

We disagree.

General damages—damages that flow directly and necessarily from a breach—are based on the value of the performance rather than the value of some consequence that performance might trigger. (*Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960, 968, 970 (*Lewis Jorge*).) Lost profits can sometimes constitute general damages. This occurs when profits """"which are the direct and immediate fruits of the contract"' are '"part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation."' [Citation.]" (*Id*. at p. 971.)

Damages are special if they "do not arise directly and inevitably from any similar breach of any similar agreement. Instead, they are secondary or derivative losses arising from circumstances that are particular to the contract or to the parties." (*Lewis Jorge*, *supra*, 34 Cal.4th at pp. 968–969.) Typically, lost profits are special damages. (*Id.* at pp. 971–972, 975.)

To determine if damages are general, a court must ask: "What performance did the parties bargain for?" (*Lewis Jorge*, *supra*, 34 Cal.4th at p. 971.)

Hersch bargained for Mattel to sell Outburst during the term of the License Agreement; to pay royalties; and to advertise. Royalties based on Mattel's guarantees and sales of Outburst, as impacted by advertising, were the direct and immediate fruits of the License Agreement. In contrast, royalties based on future sales of Outburst by a subsequent licensee were not part and parcel of the bargain. Moreover, lost future royalties would be secondary because they would arise from Outburst's market history, a

6

circumstance unique to Hersch. We conclude that the License Agreement prohibits Hersch from recovering the lost profits it seeks.

Citing *Brunvold v. Johnson* (1939) 36 Cal.App.2d 226 (*Brunvold*), Hersch argues that because the License Agreement created an exclusive sales agency, any lost profits are general damages. Even assuming the License Agreement was an exclusive sales agency, this argument is unavailing. In *Brunvold*, when a distributor wrongfully canceled an agent's exclusive sales contract, the agent sued for lost commissions. (*Id*. at pp. 228–231.) The court held that the lost commissions under the parties' contract were general damages and did not have to be pleaded specially. Hersch's attempt to analogize to *Brunvold* does not hold because Hersch is not seeking lost royalties payable under the License Agreement. Rather, it is seeking lost royalties based on a future license contract with an unknown third party.

Tackling the matter from a different angle, Hersch contends that the lost future royalties under an unknown license are general damages because the parties entered into the License Agreement with the express understanding that Mattel would rejuvenate Outburst and thereby give Hersch a benefit beyond the term of the License Agreement. Thus, Hersch suggests that royalties from future licensees were a direct fruit of the License Agreement because if Outburst was rejuvenated, third parties would want to license Outburst, and they would be able to sell it and pay royalties. This contention is problematic. The License Agreement does not impose a duty on Mattel to rejuvenate Outburst, and we have no power to read such a duty into the contract. Further, Hersch wants to retry the claim for breach of the implied covenant of good faith and fair dealing, which is premised on the theory that Mattel destroyed Outburst's brand. Because Hersch is not arguing that Mattel breached an express or implied duty to rejuvenate Outburst, Hersch has no basis upon which to claim that failure to rejuvenate Outburst caused general damages.[4]

---

[4] Because we conclude that lost profits are barred by the License Agreement, we need not determine whether they are speculative or uncertain.

7

**IV.  Breach of the Implied Covenant; Exclusion of Evidence.**

Hersch argues that the trial court erred when it concluded that there was no evidence that Mattel breached the implied covenant, and when it excluded evidence relevant to that claim.  But even if the trial court erred, there was no miscarriage of justice under California Constitution, article VI, section 13, and no basis to reverse the judgment, because the liquidated damages and lost profits sought by Hersch are not recoverable.  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 [no miscarriage of justice unless a result more favorable to the appealing party would have been reached in the absence of the error].)

**DISPOSITION**

The judgment is affirmed.

Mattel is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
               ASHMANN-GERST

We concur:

_____, J.
      CHAVEZ

_____, J.[*]
      FERNS

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.