[Nos. A126710, A126832, A127086, A128390. First Dist., Div. One. Mar. 15, 2012.]

ADASSA WALKER et al., Plaintiffs and Appellants, v.
TICOR TITLE COMPANY OF CALIFORNIA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A., II.B., and II.D.

COUNSEL

Jenkins Mulligan & Gabriel, Daniel J. Mulligan; Law Office of Simmons & Purdy and Pamela D. Simmons for Plaintiffs and Appellants.

Eisenberg and Hancock, William N. Hancock, Jon B. Eisenberg, Ben Feuer; Garrett & Tully, Robert Garrett, Ryan C. Squire and Candie Y. Chang for Defendant and Appellant.

OPINION

MARGULIES, J.—Plaintiffs sued defendant Ticor Title Company of California (Ticor) and several other defendants on allegations they participated in a conspiracy to fraudulently induce plaintiffs to take out real estate refinancing loans. The fraudulent acts were committed largely by a single defendant, Altaf Shaikh, known to plaintiffs as "Zak Khan" (Khan), acting as agent for a mortgage brokerage firm. With respect to the claims involved in this appeal, those alleged against Ticor, the trial court granted summary adjudication on a claim of aiding and abetting the fraud, and the case proceeded to trial on claims of breach of contract and fiduciary duty. Plaintiffs presented evidence that Ticor, which acted as escrow holder for the loan closings, facilitated Khan's fraud by permitting him to obtain the borrowers' signatures on the loan documents, rather than requiring the signings to occur under Ticor's supervision. With a minor exception, the jury found in Ticor's favor.

Plaintiffs contend the jury's verdicts were not supported by the evidence and the trial court erred in granting summary adjudication of their claim for aiding and abetting the fraud. In a cross-appeal, Ticor contends the trial court erred in considering plaintiffs' financial circumstances when setting its contractual attorney fees award and in allocating liability for the award among the plaintiffs, rather than making them jointly and severally liable. Ticor also claims the court should have granted reimbursement of its expert witness fees under Code of Civil Procedure section 998 (section 998). We find no error in

the disposition of plaintiffs' claims, but we conclude the trial court erred in reducing Ticor's attorney fees on the basis of plaintiffs' limited financial resources and in refusing to award expert witness fees. We vacate these orders and remand for further proceedings.[1]

## I. BACKGROUND

Plaintiffs, originally 19 individuals, filed suit against Ticor and 12 other defendants in August 2007, alleging defendants conspired to fraudulently induce them to refinance real estate loans. According to the second amended complaint, which joined two additional plaintiffs, the central figure in the fraud was Khan. While acting on behalf of a mortgage brokerage firm, he and an assistant misrepresented some facts and failed to disclose others to cause plaintiffs to enter into loans originated by defendant World Savings Bank, FSB (World Savings). Against Ticor, plaintiffs pleaded claims for breach of contract, breach of fiduciary duty, aiding and abetting the fraud of Khan and the other defendants, and "Breach of Duty." Prior to trial, the court granted summary adjudication of the aiding and abetting and breach of duty causes of action.

### A. *The Evidence at Trial*

The case proceeded to trial only against Khan, Khan's assistant, and Ticor, the latter on the remaining theories of breach of contract and fiduciary duty. The evidence demonstrated plaintiffs were induced to enter into adjustable rate mortgages originated, with one exception, by World Savings. Khan, the person who induced plaintiffs to take out these loans, was an employee of two mortgage brokerage firms, defendants Golden Gate Mortgage and Secure Financial, Inc. He located prospective refinancing customers through the activities of a telemarketing company he owned, defendant Bay Area Telemarketing, Inc. Khan used a number of unethical tactics to persuade plaintiffs to refinance, including misrepresenting the terms of the loans and failing to disclose various loan features, including payments the brokerage firm would receive. He also induced some of the plaintiffs to make payments to his telemarketing company, although he was not entitled to them, and in two cases forged the signatures of borrowers.

Each of the loans was closed under essentially identical escrow instructions. Plaintiffs' claims of breach of contract and fiduciary duty against Ticor, the escrow holder, were based on three provisions of the "LENDER'S CLOSING INSTRUCTIONS" and one provision of the "BORROWER'S

---

[1] The appellate record contains eight different notices of appeal and cross-appeal filed by plaintiffs and Ticor. All of the appeals have been consolidated in this matter by stipulation.

ESCROW INSTRUCTIONS." Most of the attention focused on the lender's instruction prohibiting Ticor from "MAIL[ING] out or otherwise releas[ing] documents" from its offices "without [World Savings's] prior approval." Plaintiffs contended a Ticor employee, Jo Saenz, regularly violated this instruction by permitting Khan to take the unsigned loan documents from Ticor's offices, obtain the borrowers' signatures on the documents himself, and return the signed documents to Ticor, thereby avoiding a signing ceremony overseen by a Ticor employee.

Ticor did not counter the evidence of Saenz's release of loan documents to Khan, but it claimed the escrow instructions were not violated because World Savings had either authorized the practice, as permitted by the escrow instruction, or waived enforcement of this provision. Ticor's evidence demonstrated that a "loan representative" for World Savings, Thilo Dreuth, worked closely with Khan, overseeing the loans he developed. Khan and Dreuth regularly discussed Khan's activities in the course of obtaining the loans. During these conversations, Khan sometimes told Dreuth that he needed the loan documents to be drawn before a certain date "[b]ecause a customer, for example, is going out of town, [and] I need to go to their home and get it signed." Based on these conversations, Khan concluded, "Thilo Dreuth knew I was picking up the document[s] from the title company" for signature and "didn't mind." Dreuth had a motive to consent to Khan's removal of the documents to facilitate closing of the loans. As Dreuth confirmed, "the more loans that closed the more money [I] made." According to an expert witness presented by Ticor, the practice of allowing mortgage brokers to take documents out of escrow to be signed was "[q]uite common" in 2003 and 2004, when these loans were obtained, due to the heavy volume of refinancing activity.

Plaintiffs were awarded total compensatory and punitive damages of $530,596 against Khan, but the jury found against them on their claims against Ticor, with one exception.[2]

## B. *Posttrial Motions*

Plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, arguing the evidence "compelled" a finding Ticor had breached the escrow instructions. The trial court denied the motion.

---

[2] The jury found a breach of contract by Ticor as to plaintiffs Daniel and Josephine Garcia, but it concluded the breach had not caused the Garcias any monetary harm.

Ticor thereafter filed a motion seeking over $2 million in attorney fees pursuant to a clause of the loan documents.[3] In opposing the motion, plaintiffs conceded Ticor was entitled to a fee award, but they contended the amount of its request was unreasonable. Detailing several examples of unnecessary conduct by Ticor's counsel, plaintiffs argued "the amount [of attorney fees] claimed must be reduced to $884,036.62." It was not until oral argument and subsequent supplemental briefing that plaintiffs raised the issues considered here, urging the court to reduce the fee award in recognition of plaintiffs' limited ability to pay and to apportion any award among them, rather than impose joint and several liability.

In setting its award of fees, the trial court observed Ticor's requested amount was "astonishing in [its] audacity" and "unreasonable by any measure in terms of time claimed to be devoted and the redundancy of effort." Reflecting plaintiffs' argument on supplemental briefing, the court also noted an award of the full amount "would be individually and collectively ruinous to the plaintiffs" and held it had the authority to reduce the award on this ground. Without explaining how these factors entered into its decision, the court set the amount of attorney fees at $884,036.62, the amount conceded by plaintiffs to be reasonable before taking into consideration their ability to pay. The court allocated liability for the fees among the plaintiffs pro rata according to their relative recoveries against Khan.

Ticor also filed a memorandum of costs seeking, inter alia, expert witness fees pursuant to section 998. In moving to tax certain costs, plaintiffs argued expert witness fees should not be available because Ticor's section 998 settlement offers, cumulatively $100,000, were unreasonable.[4] According to plaintiffs, the offers, served seven months before trial and prior to a ruling on Ticor's summary judgment motion, failed to account for their large attorney fees claim. Alternatively, plaintiffs contended fees should be denied for two Ticor experts who did not testify. One of these experts, a forensic accountant named Barbara Luna, was not offered at trial after an element of her testimony was ruled inadmissible.

The trial court denied Ticor's request for expert witness fees, agreeing the settlement offers were not made in good faith. The court explained, "The stakes in the case, notwithstanding the outcome of such, that I don't think that the 998 offer can be construed as reasonable, adequate or a good faith

---

[3] The attorney fees provision, which calls for the payment of reasonable attorney fees to the "Escrow Holder" in the event it prevails in a lawsuit, is included in the "GENERAL PROVISIONS" of the borrower's escrow instructions.

[4] The settlement offers were made individually to each plaintiff and ranged from $1,000 to $25,500. Plaintiffs did not argue that any individual offer was unreasonable, instead attacking them as a whole.

effort to have the case settle, particularly at the juncture which the offer was made and the stakes which were evident at that time." It also disallowed expert witness fees for Luna because her testimony had been excluded.

## II. DISCUSSION

Plaintiffs contend they were entitled either to JNOV or a new trial on their breach of contract and fiduciary duty claims. They also argue the trial court erred in granting summary adjudication of their claim for aiding and abetting the fraud, and they dispute the amount of the attorney fees award. In a cross-appeal, Ticor contends the trial court erred in considering plaintiffs' financial circumstances and in allocating the attorney fees award among the plaintiffs. In addition, Ticor argues the court should have granted expert witness fees under section 998.

A., B.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C.  The Award of Attorney Fees to Ticor

Both parties take issue with the trial court's consideration of the financial impact on plaintiffs in setting the amount of Ticor's contractual attorney fees award. Ticor contends the trial court abused its discretion in considering financial impact at all; plaintiffs contend the court abused its discretion by not giving it sufficient weight. In addition, Ticor contends the trial court erred in allocating liability for attorney fees among the plaintiffs, rather than imposing joint and several liability among them.

#### 1.  The Financial Impact of the Award

An award of contractual attorney fees is reviewed for abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511] (*PLCM Group*).) While a trial court has "broad authority" in determining the amount of reasonable legal fees (*ibid.*), it is an abuse of discretion to apply the "wrong legal standard" (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 [101 Cal.Rptr.3d 758, 219 P.3d 736]).

In holding it could consider the financial impact of the attorney fees award in determining reasonable fees, the trial court relied on *Garcia v. Santana* (2009) 174 Cal.App.4th 464 [94 Cal.Rptr.3d 299] (*Garcia*). The *Garcia* court

---

[*] See footnote, *ante*, page 363.

reviewed a trial court decision to deny an award of statutory attorney fees against the unsuccessful plaintiff, a resident of a low-income housing complex, because of the plaintiff's financial condition. (*Id.* at p. 468.) While the *Garcia* majority reversed the trial court's wholesale denial of fees, it allowed the trial court on remand to take into consideration the financial impact the award would have on the plaintiff in determining the amount of the award. The court's analysis began with the premise the state's residents have the " 'right of access to the courts,' " relying largely on cases addressing in forma pauperis plaintiffs. (*Id.* at pp. 471–472.) From these decisions, the court concluded, "litigation costs are not intended to be used as a tool to deny access to the courts, nor to deter persons from asserting their rights at the cost of their ability to provide for the necessities of life." (*Id.* at p. 472.) Characterizing the award of fees as a sanction, the court authorized the consideration of the financial circumstances of the losing party to ensure the fees do not " 'impose an unreasonable financial burden upon the sanctioned party.' " (*Id.* at pp. 476–477.)

In an opinion dissenting from the majority's rationale, Justice Frank Y. Jackson concluded a determination of reasonable attorney fee should not take into account the losing party's financial condition. (*Garcia, supra,* 174 Cal.App.4th at p. 479 (conc. & dis. opn. of Jackson, J.).) The dissent began with the language of the statute, Civil Code section 1354, which directs that the trial court "shall" award reasonable attorney fees to a prevailing party. Because past decisions had consistently defined reasonable fees without regard to the financial impact on the losing party, the dissent reasoned the statute required the award of fees without taking this factor into account. (*Garcia,* at p. 480 (conc. & dis. opn. of Jackson, J.).) It pointed out that the premise of in forma pauperis assistance, the judicial system's waiver of its *own* filing fees for an indigent plaintiff, is a different matter from the court's denial of attorney fees otherwise payable to a private party (*id.* at p. 481 (conc. & dis. opn. of Jackson, J.)) and disputed the majority's conclusion that a postjudgment award of attorney fees could deny a plaintiff access to the courts or serve as a punishment (*id.* at p. 482 (conc. & dis. opn. of Jackson, J.)).

█ For one obvious reason, *Garcia* is distinguishable. *Garcia* concerned an award of attorney fees pursuant to a statute, rather than a contract. If Ticor's entitlement to attorney fees were judged solely by the standards applicable to an award of damages under a contract, we would have little difficulty rejecting the consideration of such equitable matters as its financial impact. Contract damages are the classic legal remedy, consistently distinguished from equitable remedies. (E.g., *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743 [124 Cal.Rptr.3d 555].) An award of damages is judged solely by the losses suffered by the plaintiff as a result of the breach. (See generally *Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.* (2004) 34 Cal.4th 960, 967–969 [22 Cal.Rptr.3d 340, 102 P.3d

257].) To our knowledge, it has never been suggested that a party to a contract can be excused from performance, or the party's performance altered, solely as a result of that party's financial condition.[10] In any event, plaintiffs cite no such case.

The unconventional nature of contractual attorney fees, however, makes such a straightforward resolution difficult. As discussed below, contractual attorney fees awards are judged not as damages but by the rules applicable to statutory attorney fees, including the consideration of equitable factors. While recognizing this general principle, we conclude it is inappropriate to consider the losing party's financial status as an equitable factor in assessing contractual attorney fees.

While attorney fees awarded under a contract were, at one time, considered to be an element of contract damages (e.g., *Genis v. Krasne* (1956) 47 Cal.2d 241, 246 [302 P.2d 289]), that view changed with the enactment of Civil Code section 1717. While intended to ensure the mutuality of any contractual attorney fees provision (*PLCM Group, supra,* 22 Cal.4th at p. 1090), the statute also constituted statutory authority for the award of contractual fees. Once contractual attorney fees could be deemed awarded pursuant to section 1717, courts found them analogous to statutory attorney fees and declared them an element of costs of suit, rather than damages. (See *Beneficial Standard Properties, Inc. v. Scharps* (1977) 67 Cal.App.3d 227, 232 [136 Cal.Rptr. 549]; *T.E.D. Bearing Co. v. Walter E. Heller & Co.* (1974) 38 Cal.App.3d 59, 64 [112 Cal.Rptr. 910].) The Legislature endorsed this view in 1981 by amending section 1717 to add language expressly characterizing contractual attorney fees as a cost of suit.[11] (Stats. 1981, ch. 888, § 1, p. 3399.) In doing so, the Legislature intended "to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions and to eliminate distinctions based on whether recovery was authorized by statute or by contract." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 616 [71 Cal.Rptr.2d 830, 951 P.2d 399].) Following the amendment of section 1717, " 'attorney's fees were to be seen as allowed by statute, rather than by contract.' " (*PLCM Group, supra,* 22 Cal.4th at p. 1091.)

Accordingly, while the availability of an award of contractual attorney fees is created by the contract (Code Civ. Proc., § 1033.5, subd. (a)(10)(A)), the

---

[10] The doctrine of impossibility is not an exception. That defense excuses performance, not because a party has become financially unable to perform, but because performance itself has become "impractica[l] due to excessive and unreasonable expense." (*City of Vernon v. City of Los Angeles* (1955) 45 Cal.2d 710, 717 [290 P.2d 841].)

[11] The amendment added the language, "Reasonable attorney's fees shall be fixed by the court . . . and shall be an element of the costs of suit." (Stats. 1981, ch. 888, § 1, p. 3399.) The sentence is retained in subdivision (a) of Civil Code section 1717.

specific language of the contract does not necessarily govern the award. In setting contractual attorney fees, " '[e]quitable considerations [under Civil Code section 1717] must prevail over . . . the technical rules of contractual construction.' " (*PLCM Group, supra,* 22 Cal.4th at p. 1095, quoting *International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, 224 [145 Cal.Rptr. 691, 577 P.2d 1031].) Parties to a contract cannot, for example, enforce a definition of "prevailing party" different from that provided in Civil Code section 1717. (*Santisas v. Goodin, supra,* 17 Cal.4th at p. 617.) In its most recent statement of the factors to be considered in setting an award of contractual attorney fees, the Supreme Court noted: "Although the terms of the contract may be considered, they 'do not compel any particular award.' " (*PLCM Group,* at p. 1096.)

■ While we recognize that an award of contractual attorney fees may be subject to equitable considerations, we nonetheless conclude a losing party's financial condition should not be considered in setting the amount of such an award. As the dissent in *Garcia* makes clear, the issue is not without controversy even in connection with statutory attorney fees. It is by no means clear that statutory attorney fees should be characterized as denying an indigent party access to the courts or as a punishment, the rationale used by the *Garcia* majority. (See *Garcia, supra,* 174 Cal.App.4th at p. 482 (conc. & dis. opn. of Jackson, J.).) Further, the *Garcia* majority's ruling has the effect of "penaliz[ing] a defendant who prevails in litigation into which he has been involuntarily thrust by preventing him from recovering what the Legislature has determined to be a just award." (*Id.* at pp. 482–483 (conc. & dis. opn. of Jackson, J.).)

■ In any event, *Garcia*'s reasoning does not justify its application to contractual attorney fees because, unlike statutory fees, contractual fees are voluntarily incurred. The possibility of an award of contractual attorney fees exists because the parties chose to enter into an agreement containing an appropriate provision. The award is a business risk assigned as a matter of mutual agreement by the parties. As a result, contractual attorney fees cannot fairly be characterized as a punishment. Nor can the possibility of an award of contractual attorney fees constitute an improper denial of access to the courts, since the risk of such an award has been undertaken in return for the benefits of the contract.[12]

■ We recognize this holding is, on its face, inconsistent with language stating that Civil Code section 1717 was intended to "eliminate distinctions based on whether recovery was authorized by statute or by contract."

---

[12] The same is not necessarily the case with respect to a plaintiff in a lawsuit featuring the possibility of statutory attorney fees, since the plaintiff has no choice but to risk an award of attorney fees in order to enforce his or her statutory rights.

(*Santisas v. Goodin, supra*, 17 Cal.4th at p. 616.) On examination, however, this language is addressed solely to uniformity in the various factors to be considered in determining the value of the legal work to be compensated. The intent of this determination is "to fix the fee at the fair market value for the legal services provided" through "an objective determination of the value of the attorney's services." (*PLCM Group, supra*, 22 Cal.4th at p. 1095.) Courts are therefore instructed to consider such factors as " 'the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' " (*Id.* at p. 1096.) It is in this regard that section 1717 was intended to impose uniformity, thereby ensuring the calculation of reasonable attorney fees would be the same whether imposed under contract or statute.

■ Our conclusion does not threaten this uniformity. In finding *Garcia*'s rationale inapplicable to contractual attorney fees, we have not introduced a difference in the calculation of the "objective determination of the value of the attorney's services" between statutory and contractual attorney fees. (*PLCM Group, supra*, 22 Cal.4th at p. 1095.) A reduction in an award of attorney fees otherwise determined to be reasonable on the basis of the losing party's financial condition is not a change in the determination of the fair market value of the legal services rendered. Rather, it is an equitable reduction in the losing party's liability for an otherwise reasonable fee. We find nothing in Civil Code section 1717 or the cases construing it that suggests contractual and statutory awards must be consistent in permitting such reductions. Accordingly, we conclude the trial court abused its discretion in considering the financial condition of plaintiffs when setting Ticor's award of contractual attorney fees, and we remand for reconsideration of the award of attorney fees under the proper legal standard.

### 2. *The Allocation of Liability Among the Plaintiffs*

Rather than enter a single award of attorney fees for which plaintiffs were jointly and severally liable, the trial court allocated a portion of the total award to each plaintiff, assigning fees on the basis of plaintiffs' relative recoveries against Khan. Ticor contends the trial court lacked discretion to allocate liability for the fees in this manner, arguing the "usual rule in California" is that multiple losing parties are jointly and severally liable for a contractual attorney fees award. (E.g., *Mepco Services, Inc. v. Saddleback Valley Unified School Dist.* (2010) 189 Cal.App.4th 1027, 1045 & fn. 25 [117 Cal.Rptr.3d 494]; *Glass v. Najafi* (2000) 78 Cal.App.4th 45, 47 [92 Cal.Rptr.2d 606].)

■ Regardless of the "usual rule," it is well established that "trial courts have discretion not only in setting the amount of an award of attorney fees,

but in allocating the award among various defendants based on their relative culpability." (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 97–98 [100 Cal.Rptr.3d 152]; see *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 250 [261 Cal.Rptr. 520].) It can even constitute an abuse of discretion *not* to allocate fees when defendants are of very different relative culpability. (*No Oil, Inc. v. Occidental Petroleum Corp.* (1975) 50 Cal.App.3d 8, 28–29 [123 Cal.Rptr. 589].)

By the same reasoning, equitable considerations can justify a trial court's apportionment of an award of attorney fees among multiple plaintiffs in appropriate circumstances. In *Golf West of Kentucky, Inc. v. Life Investors, Inc.* (1986) 178 Cal.App.3d 313 [223 Cal.Rptr. 539], superseded by statute on other grounds as stated in *Cooper v. Westbrook Torrey Hills* (2000) 81 Cal.App.4th 1294, 1299–1300 [97 Cal.Rptr.2d 742], the court allocated an appellate cost judgment between two plaintiffs who had sued the defendant under individual franchise agreements and consolidated their cases for trial. (*Golf West*, at pp. 317–318.) The court rejected the argument the plaintiffs should be found jointly and severally liable for costs, noting there would have been no question of joint and several liability had they not chosen to join their cases. Similarly here, although plaintiffs elected to bring suit together, they were not joint obligors on a single contract. Each plaintiff (or plaintiff couple) had a separate agreement with Ticor and could have filed suit separately. Their individual decisions not to do so resulted in efficiencies for all parties and the court, of course, but in particular for Ticor, which was required to defend only one lawsuit rather than a dozen. We find this an adequate justification for the trial court's exercise of discretion in allocating attorney fees among the plaintiffs, rather than imposing joint and several liability.

The primary case on which Ticor relies, *Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370 [29 Cal.Rptr.3d 306], is inapposite. The *Acosta* court was not asked to, and did not, address the discretion of a trial court in allocating costs liability. In fact, the defendant in *Acosta* conceded the court had the discretion to impose an allocation of costs under Code of Civil Procedure section 1032. (*Acosta*, at p. 1374.) Rather, the court addressed only the plaintiffs' contention the defendant's memorandum of costs was defective because it *failed* to apportion costs of suit among them. (*Id.* at p. 1373.) In concluding the defendant's memorandum of costs was not defective for this reason (*id.* at pp. 1378, 1379), the court had no occasion to consider the plaintiffs' actual liability for the costs.[13]

---

[13] Ticor also appears to argue the trial court abused its discretion in the manner in which it allocated fees, pointing out that allocation pro rata according to their damages had the effect of allocating some of the largest fee awards to what appeared to be the least financially capable plaintiffs. We find nothing unreasonable about the court's decision. By allocating fees in the

D.  *Expert Witness Fees**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.  DISPOSITION

The trial court's ruling on the award of contractual attorney fees and its denial of expert witness fees to Ticor are vacated, and the matter is remanded to the trial court for further proceedings consistent with this decision. The judgment is otherwise affirmed. Ticor is entitled to recover its costs on plaintiffs' appeals. The parties will bear their own costs with respect to Ticor's appeals.

Marchiano, P. J., and Banke, J., concurred.

.

---

manner it chose, the trial court allocated the greatest attorney fees to the plaintiffs who were entitled to the largest recoveries against Khan and therefore stood to gain the most from the litigation.

*See footnote, *ante*, page 363.