Filed 7/29/13  Abbey v. Fortune Drive Assocs. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BRANDON ABBEY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FORTUNE DRIVE ASSOCIATES, LLC,<br><br>    Defendant and Appellant. | A135062<br><br>(San Mateo County<br> Super. Ct. Nos. CIV 479539,<br>CIV 480548) |

Plaintiff Brandon Abbey filed two lawsuits against defendant Fortune Drive Associates, LLC (Fortune).  The first lawsuit sought damages in connection with Abbey's business dealings with Fortune.  The second sought to enjoin an arbitration commenced by Fortune regarding similar issues.  The trial court granted the requested relief in the second lawsuit, staying the arbitration.  Following entry of a declaratory judgment for Abbey in the second lawsuit, and before the conclusion of the first lawsuit, Abbey was awarded attorney fees under Civil Code section 1717 (section 1717).  Fortune contends the trial court erred in awarding attorney fees, arguing such an award is available only to the prevailing party in the underlying contractual dispute.  We agree and reverse the award.

## I.  BACKGROUND

In August 2008, Abbey filed a lawsuit in San Francisco Superior Court (the merits lawsuit) against Fortune and others (together, defendants) in connection with his involuntary termination from involvement in the business activities of Fortune.  Because

of an upheaval in the law practice of Abbey's attorney, he did not immediately serve the complaint. In October 2008, the attorney finally notified counsel for defendants of the filing of the merits lawsuit, but he told counsel the complaint would not be served until his professional situation improved. Rather than await service of the merits lawsuit, Fortune promptly served a demand for arbitration of the dispute and commenced proceedings with the American Arbitration Association (AAA).

Fortune's claim of a right to arbitrate was based on an amendment to Fortune's operating agreement (the Third Amendment), which provided that all disputes regarding Abbey's termination from Fortune would be resolved by AAA arbitration. The same provision contained an attorney fees clause stating: "The arbitrator may also assess reasonable attorneys' fees and expenses and the fees and expenses of appraisers or other experts, in amounts the arbitrator determines are equitable, as well as all other costs of arbitration or any ensuing litigation, against a party to the action if the arbitrator determines that such party acted arbitrarily, vexatiously, not in good faith and/or unreasonably."

As Fortune pressed ahead with preparations for the arbitration, Abbey's attorney caused the merits lawsuit to be served on defendants in early December 2008. Defendants objected to the lawsuit's venue in San Francisco and raised concerns about the manner of service, but they offered to accept service if venue was changed to San Mateo County. Around the same time, the arbitrator scheduled commencement of the arbitration for April 2009.

Concerned about the progress of the arbitration proceedings, to which Abbey objected, and worried the merits lawsuit could not be transferred to San Mateo County in time to stop the arbitration, Abbey's attorney filed a lawsuit against Fortune in San Mateo County on December 19, 2008 (the declaratory relief lawsuit).[1] The declaratory relief lawsuit contained no causes of action based on Abbey's business dealings with Fortune,

---

[1] The declaratory relief lawsuit was filed only against Fortune, perhaps because Fortune was the only listed claimant in the demand for arbitration.

seeking only a stay of the arbitration and a declaration that Abbey was not bound by the arbitration provision of the Third Amendment. In a February 2009 ruling in the declaratory relief lawsuit, the trial court stayed the arbitration. We affirmed that ruling, finding the arbitration clause in the Third Amendment to be unenforceable against Abbey. (*Abbey v. Fortune Drive Associates, LLC* (Apr. 20, 2010, A124684) [nonpub. opn.] (*Abbey I*).)

In the meantime, the merits lawsuit had been transferred to San Mateo County, arriving in January 2009. Following the trial court's entry of a stay of arbitration in the declaratory relief lawsuit, defendants filed a petition to compel arbitration in the merits lawsuit. Consistent with its ruling in the declaratory relief lawsuit, the trial court denied the petition to compel arbitration. Defendants also appealed this ruling, and our decision in *Abbey I* disposed of both appeals.

In February 2011, judgment was entered in the declaratory relief lawsuit.[2] In March, Abbey filed a memorandum of costs, followed in April by a motion for attorney fees under section 1717. In an order of June 20, 2011, the law and motion judge denied Abbey's attorney fees motion without prejudice and directed Abbey to file the motion before the complex case judge to whom the merits lawsuit had been assigned. In the same order, the law and motion judge consolidated the declaratory relief lawsuit and the merits lawsuit "[o]n the court's own motion."

Abbey refiled the attorney fees motion as directed on October 20, 2011, seeking all fees incurred in connection with his challenge to the arbitration, including his response to the petition to compel arbitration in the merits lawsuit. In an order containing detailed findings of fact and law, the trial court granted the motion as to the attorney fees incurred in connection with proceedings in the declaratory relief lawsuit and the *Abbey I* appeal,

---

[2] We have not located a copy of this judgment in the appellate record, but the docket sheet from the declaratory relief lawsuit notes the entry of a judgment on February 8, 2011, followed a week later by the filing of a "Notice of Entry of Declaratory Judgment" by Abbey. According to the trial court's ruling on attorney fees, the parties stipulated to entry of a judgment declaring there is no enforceable agreement to arbitrate.

3

but it denied the motion as to fees incurred in the merits lawsuit, which had not been concluded. The court found unenforceable the language in the Third Amendment permitting an award of fees only if the opposing party's conduct was found to be unreasonable, holding: "The operative basis for awarding attorneys' fees herein is Section 1717, not the particular language of the unenforceable arbitration clause."

## II. DISCUSSION

Fortune contends attorney fees could be awarded under the Third Amendment only to the prevailing party in the merits lawsuit and could not be awarded without a finding of unreasonable conduct. When, as here, a party's entitlement to attorney fees " 'amounts to statutory construction and a question of law,' " we review the trial court's decision de novo. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

### A. *Single Prevailing Party*

Section 1717 states, in relevant part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." (*Id.*, subd. (a).)

A primary purpose of section 1717 is to ensure mutuality of remedy under contractual attorney fees provisions. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611 (*Santisas*).) As the Supreme Court explained in *Santisas*, in language directly applicable to Abbey's motion: "The second situation in which section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, is when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' [Citation.] Because these arguments are inconsistent with a contractual claim for attorney fees under the same agreement, a party prevailing on any of these bases usually cannot claim attorney fees as a contractual right. If

4

section 1717 did not apply in this situation, the right to attorney fees would be effectively unilateral . . . because only the party seeking to affirm and enforce the agreement could invoke its attorney fee provision. To ensure mutuality of remedy in this situation, it has been consistently held that when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." (*Id.* at p. 611.) Accordingly, while Abbey might have no *contractual* right to recover attorney fees under the Third Amendment, since the arbitration provision containing the attorney fees clause has been held unenforceable as to him, he has a *statutory* right to attorney fees under section 1717, which arises as a result of the contractual provision. Fortune does not contend otherwise.[3]

Although Fortune does not contest Abbey's right to invoke section 1717 despite the invalidity of the arbitration clause containing the attorney fees provision, it contends this case should be governed by the general rule that "there may be only one prevailing party entitled to attorney fees on a given contract in a given lawsuit." (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 535, fn. 14 (*Frog Creek*).) Under this rule, Fortune argues, the prevailing party entitled to attorney fees must be determined by the outcome of the merits lawsuit. Abbey argues he is entitled to attorney fees without regard to the merits lawsuit because the validity of the arbitration clause was litigated and resolved in a different, discrete lawsuit.

There are three leading decisions in this area. The earliest, *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796 (*Otay*), featured a construction dispute and three contracts, only two of which contained an arbitration

---

[3] More generally, although the right to attorney fees under section 1717 is triggered by the presence of a contractual provision, such attorney fees are regarded as awarded pursuant to section 1717, rather than the contract. (See *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 372 (*Walker*) ["Following the amendment of section 1717 [in 1981], ' "attorney's fees were to be seen as allowed by statute, rather than by contract." ' "].)

clause. (*Id.* at p. 800.) The plaintiff commenced an arbitration proceeding, contending the dispute arose under one of the contracts authorizing arbitration. When the defendant declined to arbitrate, the plaintiff filed a petition to compel arbitration in superior court. (*Ibid.*) The trial court denied the petition, concluding the dispute arose under the contract that did not require arbitration. When the defendant sought attorney fees as the prevailing party in the plaintiff's unsuccessful petition to compel, the trial court denied the motion on the ground the defendant had not prevailed in the "contemplated" litigation on the merits of the contract claims. (*Id.* at p. 801.)

The Court of Appeal reversed. It began with the language of section 1717, which, the court noted, "governs awards of attorney fees based upon a contract and authorizes an award of attorney fees to a prevailing party '[i]n any action on a contract' 'to enforce that contract' if the contract provides for an award of attorney fees." (*Otay, supra*, 158 Cal.App.4th at p. 806.) The court reasoned that a petition to compel arbitration is an " 'action on the contract' " for purposes of section 1717 and the defendant was the prevailing party in that action, thereby entitling the defendant to an award of fees. (*Otay,* at p. 807.) Rejecting the plaintiff's characterization of the result as merely "an interim procedural victory," the court held that the order denying arbitration was "an appealable order or judgment in a discrete legal proceeding even though the underlying litigation on the merits was not final." (*Ibid.*) It distinguished the cases on which the plaintiff relied as not "involv[ing] the final resolution of a discrete legal proceeding" (*ibid.*), concluding "the merits of the contract claims under the [contract] that [the plaintiff] sought to send to arbitration were not at issue in the court proceedings to compel arbitration and the fact that the parties will probably pursue these claims in another action does not lessen [the defendant's] victory in this discrete legal proceeding." (*Id.* at p. 808.)

The second decision, *Turner v. Schultz* (2009) 175 Cal.App.4th 974 (*Turner*), applied the principle announced in *Otay* in circumstances similar to those presented here. Like Abbey, the plaintiff in *Turner* was terminated from his employment with a company in which he was an investor. When he expressed dissatisfaction with the formula for repurchasing his investment, the company and its officers demanded AAA arbitration of

the dispute pursuant to a clause in the pertinent contract. (*Id.* at p. 977.) The plaintiff declined to participate, contending the agreement had been fraudulently induced, and filed a breach of contract action in Contra Costa County. When the AAA pressed ahead with preparations for the arbitration, the plaintiff filed a separate action in San Francisco Superior Court against the defendants and the AAA, seeking an injunction against further proceedings and a declaration the arbitration could not proceed without an order compelling arbitration. (*Id.* at pp. 977–978.) The trial court eventually refused the request for an injunction. In the meantime, the defendants had filed a petition to compel arbitration in the plaintiff's Contra Costa County action, which was granted. They thereafter successfully moved for judgment on the pleadings in the San Francisco action and were granted attorney fees under section 1717. (*Turner*, at pp. 978–979.)

The Court of Appeal affirmed the fees order. The court first rejected the plaintiff's contention the San Francisco action was not an action " 'on the contract' " for purposes of section 1717, reasoning a declaratory relief action to avoid enforcement of a contract is an action on the contract. (*Turner, supra*, 175 Cal.App.4th at p. 980.) Relying on *Otay* and *Acosta v. Kerrigan* (2007) 150 Cal.App.4th 1124, the court also rejected the argument the prevailing party could not be determined until conclusion of the pending lawsuit over the merits of the plaintiff's claims, reasoning, "The fees at issue were incurred in connection with an independent complaint for declaratory and injunctive relief. As in *Otay*, the only issue before the court—whether the arbitration should be allowed to proceed—was resolved in defendants' favor in this discrete legal proceeding. . . . Irrespective of who becomes the prevailing party in the subsequent arbitration, there was a prevailing party for purposes of section 1717 in this discrete proceeding on the contract, and the trial court could properly award attorney fees." (*Turner*, at pp. 983–984, fn. omitted.)

Finally and more recently came *Frog Creek, supra,* 206 Cal.App.4th 515, a thorough examination of the relevant statutes and case law in this area. The *Frog Creek* defendant filed a petition to compel arbitration in the plaintiff's action for breach of contract. The trial court denied the petition when the defendant was unable to produce a

version of the contract with an arbitration provision, a decision affirmed on appeal. (*Id.* at pp. 521–522.) Following remand, the defendant renewed its petition to compel, having located another contract. Although the petition was denied in the trial court, the Court of Appeal reversed and ordered arbitration. (*Id.* at p. 522.) When the defendant later prevailed in the arbitration, the arbitrators declined to rule on the parties' entitlement to attorney fees in connection with the legal skirmishing that preceded the arbitration proceeding. (*Ibid.*) The parties then filed cross-motions under section 1717 in the trial court, the defendant seeking all of its pre-arbitration attorney fees and the plaintiff seeking the fees incurred in connection with its defeat of the initial petition to compel. The trial court awarded the plaintiff the fees it sought, reasoning it was the prevailing party on that petition and in the first appeal. (*Frog Creek*, at p. 523.)

The Court of Appeal reversed the award of attorney fees to the plaintiff, holding after an extensive analysis that "the trial court erred in awarding [the plaintiff] attorney fees under Civil Code section 1717 for prevailing on the first petition to compel arbitration because [the defendant] prevailed on the contract action overall; the Legislature did not intend to authorize multiple attorney fees awards to multiple prevailing parties on a single contract in a given lawsuit." (*Frog Creek, supra*, 206 Cal.App.4th at p. 546.) In the course of its analysis, *Frog Creek* discussed and distinguished both *Otay* and *Turner*, concluding that these decisions "confirm that attorney fees should be awarded to the party who prevails on a petition to compel arbitration only when the resolution of that petition terminates the entire 'action on the contract.' " (*Frog Creek*, at p. 531.) The court expressed no reservations about the result in *Otay*, which *Frog Creek* characterized as holding, "when a party *defeats* an independent petition to compel arbitration, the action is terminated and the prevailing party on the petition is entitled to fees under Civil Code section 1717." (*Id.* at p. 533.) The court was more equivocal in its discussion of *Turner*, noting in a footnote: "*Turner* is consistent with our interpretation of Civil Code section 1717: there may be only one prevailing party entitled to attorney fees on a given contract in a given lawsuit. However, in light of *Turner*'s somewhat unusual procedural posture, in which a pending lawsuit

8

addressed the substantive contractual claims involved in the independent action, we express no opinion on the court's conclusion that a fee award was proper in the circumstances of that case." (*Frog Creek*, at p. 535, fn. 14.)

We share *Frog Creek*'s concern with permitting an award of fees independent of the outcome of the underlying contractual litigation when, as here, the underlying contractual litigation was pending at the time the independent action was filed. While we do not challenge the correctness of the result in *Turner*, we conclude the existence of two separate lawsuits is, standing alone, insufficient to justify abandoning the generally applicable rule under section 1717 in the circumstances presented here.[4] When the availability of arbitration is litigated in a discrete action only because the party seeking attorney fees voluntarily elected to file a separate action, rather than raise the issue in a pending contractual lawsuit, there is no basis for departing from the rule of one prevailing party.

The general rule that section 1717 permits only one prevailing party per dispute was established at least as far back as *La Pietra v. Freed* (1978) 87 Cal.App.3d 1025, in which the plaintiffs filed an action for breach of a contract containing an arbitration clause. The defendant, who had already instituted an arbitration proceeding, filed a successful motion to compel in the plaintiff's lawsuit and was awarded attorney fees in connection with that motion. (*Id.* at p. 1028.) The Court of Appeal reversed the award of attorney fees, holding that section 1717, which at that time defined the prevailing party in an action on a written contract as the " 'party in whose favor final judgment is rendered,' " did not permit a separate award of attorney fees to the prevailing party on a motion to compel arbitration, since the order granting the motion did not constitute a final judgment. (*La Pietra*, at pp. 1030–1031.) Although the language in section 1717 has since been amended, the careful analysis in *Frog Creek* demonstrates that these changes

---

[4] Fortune has filed a request for judicial notice of the special verdicts rendered in the trial of the merits lawsuit, which apparently was concluded in December 2012, after close of the record on appeal. Because we find the outcome of the merits lawsuit to be irrelevant to our decision, we deny this request.

were not intended to change the "one prevailing party" rule. (*Frog Creek, supra*, 206 Cal.App.4th at pp. 525–531.) Given the Legislature's failure over the last 35 years to overturn the rule announced in *La Pietra*, despite tinkering with section 1717 in the interim, we conclude the principle of one prevailing party is legislatively favored.

This conclusion is reinforced by Code of Civil Procedure section 1292.4, which ensures that, once a lawsuit is filed with respect to a particular contractual dispute, the availability of arbitration will generally be litigated within that lawsuit. Section 1292.4 states: "If a controversy referable to arbitration under an alleged agreement is involved in an action or proceeding pending in a superior court, a petition for an order to arbitrate shall be filed in such action or proceeding." A party seeking to compel arbitration therefore *must* file its petition in the merits lawsuit, if one is already pending. (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 772.) As a result of section 1292.4, the issue of arbitration is often required to be resolved in the merits lawsuit, and the "one prevailing party" rule necessarily precludes a separate award of attorney fees with respect to the parties' litigation over the issue of arbitration.

The present circumstances exist only because, when a party is seeking to *defeat,* rather than compel, arbitration, there is no parallel statutory requirement that litigation over the availability of arbitration occur in a pending merits lawsuit. While there may be circumstances in which the absence of such a requirement justifies a separate award of attorney fees to the prevailing party in a proceeding to defeat arbitration, we find no such justification here.

By the time Abbey filed the declaratory relief lawsuit, his merits lawsuit had been pending for several months, and the merits lawsuit was served on Fortune only days before the declaratory relief lawsuit was filed. Because the merits lawsuit concerned the Third Amendment, which had been drafted by Fortune and contained the arbitration clause, Abbey could readily have anticipated that Fortune would assert a right to arbitrate the dispute. Abbey's causes of action to defeat arbitration therefore could have been included in the original complaint of the merits lawsuit. Even if Abbey did not anticipate the possibility of arbitration at the time the merits lawsuit was filed, his challenge to the

10

arbitration clause could have been asserted by way of an amended complaint in the merits lawsuit, rather than by separate lawsuit. Finally, even if the exigencies of the moment made a separate lawsuit convenient, as his attorney avers, the merits lawsuit could have been consolidated with the declaratory relief lawsuit once the merits lawsuit was transferred to San Mateo County, prior to resolution of the arbitration issue. The two lawsuits were, in fact, consolidated sua sponte, although not until after entry of judgment in the declaratory relief lawsuit. In short, Abbey was not required, whether by law or circumstances, to resolve the issue of arbitration in a lawsuit separate from the merits lawsuit. He merely chose to do so.

We find no basis for departing from the general rule of section 1717 merely because Abbey chose to resolve the issue in that manner. When there is no legal necessity for resolving the issue in a separate proceeding, the difference between one and two proceedings is merely one of form and does not justify the imposition of a different substantive rule regarding the availability of attorney fees. Further, to hold otherwise would encourage parties to file unnecessary litigation merely to preserve the possibility of a separate award of attorney fees on litigation of the issue of arbitration, contrary to the "one prevailing party rule." Accordingly, we hold that where a party elects to file a separate lawsuit challenging the availability of arbitration at a time when a lawsuit over the underlying contractual dispute is already pending, the filing party is bound by the generally applicable "one prevailing party" rule, at least when the filing of an independent lawsuit was not legally mandated.[5]

This holding does not conflict with the outcome of either *Otay* or *Turner*. In both, the party awarded attorney fees was not the party responsible for instituting the separate

---

[5] Fortune argues Abbey's decision to raise his claim for declaratory relief in a separate lawsuit from his breach of contract claims constituted "claim splitting." Because Fortune did not raise this argument as a plea in abatement of the declaratory relief action, it may be raised only as a bar to the merits lawsuit, not to challenge the result in the declaratory relief action. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904.) Fortune also argues in its reply brief that the attorney fees provision, by its terms, is inapplicable to this dispute. We find it unnecessary to reach this issue.

proceedings. On the contrary, in *Turner,* the party awarded attorney fees had filed a petition to compel arbitration in the plaintiff's merits lawsuit. It litigated the issue of arbitration in the separate lawsuit only because the plaintiff had elected to file an action challenging the availability of arbitration. The prevailing party's litigation of the issue in a separate proceeding was therefore involuntary. In *Otay,* the initial proceeding over the merits was commenced as an arbitration. The filing of a separate lawsuit was therefore legally necessary to permit judicial resolution of the issue of the availability of arbitration. Again, the use of a separate proceeding was not a voluntary decision of the party seeking fees. Given these different circumstances, our result is consistent with both decisions.

## B. *Unreasonable Conduct*

As noted above, the attorney fees provision in the Third Amendment permitted an award of fees only if "the arbitrator determines that such party acted arbitrarily, vexatiously, not in good faith and/or unreasonably." The trial court made no finding of unreasonable conduct, holding this aspect of the attorney fees clause to be rendered unenforceable when the arbitration clause itself was found unenforceable. Although our reversal of the trial court's award of attorney fees to Abbey makes it unnecessary for us to address this issue, we elect to do so because the issue may arise again in connection with a motion for attorney fees based on the outcome of the merits lawsuit. We agree with Fortune this language constitutes an enforceable limitation on any award of attorney fees.

In enacting the present version of section 1717, "the Legislature intended 'to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions and to eliminate distinctions based on whether recovery was authorized by statute or by contract.' " (*Walker, supra*, 204 Cal.App.4th 363, 372.) In order to promote the Legislature's objective of standardizing the award of attorney fees under section 1717, the precise provisions of a contractual attorney fees provision will not always be enforced. "[W]hile the availability of an award of contractual attorney fees is created by the contract [citation], the specific language of the contract does not

12

necessarily govern the award.  In setting contractual attorney fees, ' "[e]quitable considerations [under section 1717] must prevail over . . . the technical rules of contractual construction." ' [Citation.]  Parties to a contract cannot, for example, enforce a definition of 'prevailing party' different from that provided in Civil Code section 1717. [Citation.]  In its most recent statement of the factors to be considered in setting an award of contractual attorney fees, the Supreme Court noted:  'Although the terms of the contract may be considered, they "do not compel any particular award." ' " (*Walker,* at pp. 372–373.)

The borders of this principle, as it applies to our circumstances, are defined by two decisions.  In the first, *Wong v. Thrifty Corp.* (2002) 97 Cal.App.4th 261 (*Wong*), the terms of a lease permitted an award of attorney fees in an action to enforce the lease only if " 'it shall be determined that Lessee was in default.' " (*Id.* at p. 263.)  The trial court denied attorney fees to the landlord because he had accepted the lessee's statutory settlement offer, making it unnecessary for the court to render a determination of default. (*Ibid.*)  *Wong* held the "determination of default" restriction unenforceable because it (1) altered the statutory definition of "prevailing party" in actions in which no formal finding of default was made and (2) defeated the mutuality of the attorney fees provision. (*Id.* at pp. 264–265.)

In the second decision, *Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424 (*Leamon*), the court considered a real estate purchase contract that permitted an award of attorney fees only if the party seeking fees had sought to mediate before filing suit or had not refused mediation when requested. (*Id.* at p. 432.)  *Leamon* enforced this clause, finding it satisfied the mutuality requirement and did not otherwise conflict with the public policy aims of section 1717. (*Leamon*, at p. 433.)  *Leamon* distinguished *Wong* by characterizing the mediation requirement as a "condition precedent" to the award of

13

attorney fees and holding section 1717 does not forbid such conditions, so long as they do not conflict with the public policy objectives of the statute.[6] (*Leamon*, at p. 436.)

We conclude the requirement of a finding of unreasonable conduct is closer to the *Leamon* condition precedent than to the limitation in *Wong* because a restriction of the award to circumstances of unreasonable conduct does not offend the policy objectives of section 1717.  As noted above, section 1717 was intended to introduce an element of uniformity in the awarding of contractual attorney fees, particularly between fees awarded under contracts and those authorized by statute.  Upon examination, however, the desired uniformity concerns a restricted range of issues.  First, and perhaps most important, section 1717 standardizes the determination of the prevailing party for purposes of an award of attorney fees.  Accordingly, the statute itself defines the prevailing party, and that definition supersedes any contrary definition in the contractual clause.  (*Id.*, subd. (b)(1); *Santisas, supra,* 17 Cal.4th at pp. 615–617.)  Second, section 1717 is intended to ensure attorney fees clauses are mutual, which means an award of attorney fees is available on the same terms to all parties.  (*Santisas,* at pp. 616–617.)  Finally, section 1717 was intended to standardize the manner of determining the amount of a reasonable fee.  (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096.)

Limiting attorney fees to parties who have encountered unreasonable conduct does not offend any of these policy objectives.  It does not alter the definition of a prevailing party.  The party who has prevailed in the litigation, and thus is eligible for an award of attorney fees, must be determined according to section 1717.  The limitation does not change the nature of this determination; it means only that the prevailing party, as so determined, will not necessarily recover attorney fees.  As *Leamon* implicitly recognized, section 1717 contains no requirement that a prevailing party *must* recover attorney fees under a contractual attorney fees provision.  (*Leamon, supra,* 107 Cal.App.4th at p. 436.)

---

[6] The same contractual restriction found in *Leamon* has been enforced in other decisions as well.  (E.g., *Lange v. Schilling* (2008) 163 Cal.App.4th 1412, 1417.)

Second, there is no violation of the principle of mutuality. Both Abbey and Fortune would be allowed fees only if the opposite party is found to have acted unreasonably.[7] Finally, the limitation does not affect in any way the calculation of the amount of fees awardable, once an award is found appropriate. Because this limitation does not contradict the public policy objectives of section 1717, it should have been enforced by the trial court.

### III. DISPOSITION

The award of attorney fees to Abbey is reversed.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

---

[7] This illustrates the flaw in the trial court's rationale, which would defeat the mutuality of the attorney fees clause. Under the trial court's reasoning, Fortune would be bound by the language of the clause had it been found enforceable, yet Abbey was found entitled to fees without regard to the unreasonable conduct limitation because the clause was found unenforceable. Section 1717 forbids such a double standard.